IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF/RESPONDENT

Criminal No. 18-50023-003

JORGE CABALLERO-GONZALEZ                                    DEFENDANT/MOVANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Currently before the undersigned is a 28 U.S.C. § 2255 motion filed by the Defendant/Movant Jorge Caballero-Gonzalez (hereinafter "Defendant") on November 4, 2019. (Doc. 100). By Order dated November 5, 2019, the Court appointed Assistant Federal Public Defender Joe Alfaro to represent Defendant and to file an amended § 2255 motion. (Doc. 102). On January 21, 2020, Defendant filed an amended § 2255 motion. (Doc. 107). The Government filed a response on March 24, 2020. (Doc. 110). Defendant filed a reply on March 31, 2020. (Doc. 111). On April 1, 2020, the Court directed the Government to file a surreply addressing the arguments raised in Defendant's reply. (Doc. 112). On April 8, 2020, the Government filed the surreply. (Doc. 113). On September 3, 2020, the Court directed Defendant to file a reply to the Government's surreply. (Doc. 114). The Defendant filed the reply on October 2, 2020. (Doc. 115). An evidentiary hearing[1] was held on January 27, 2021, during which it was determined that a supplemental hearing would be required. (Doc. 124). The supplemental hearing was held on February 19, 2021. (Doc. 127).

---

[1] The evidentiary hearing was held via Zoom. Defendant waived his personal appearance. (Doc. 117).

1

## I.   BACKGROUND

On March 6, 2018, Defendant was originally named in two counts of a six-count Indictment. (Doc. 10). Count One charged Defendant with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Id. Count Two charged Defendant with distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Id.

On April 2, 2018, the Court appointed Ken Osborne to represent Defendant. On April 24, 2018, retained counsel Erwin L. Davis filed an entry of appearance and Mr. Osborne was allowed to withdraw. (Doc. 37).

On June 4, 2018, Defendant appeared with his attorney for a change of plea hearing. (Doc. 45). At this hearing, the Court advised the Defendant that an interpreter was available at the proceeding to assist him. The Defendant chose to proceed without the assistance of an interpreter, informing the Court he understood about ninety percent of spoken English and could read about eighty percent of printed English. (Doc. 105, pp. 5-7). Pursuant to the written Plea Agreement (Doc. 46), Defendant pled guilty to Count Two of the Indictment charging Defendant with knowingly and intentionally distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Defendant appeared for sentencing on October 5, 2018. (Doc. 75). The Court again made Defendant aware that an interpreter was on stand-by, but Defendant again informed the Court that he was comfortable proceeding in English. (Doc. 106, pp. 2-3). A judgment was entered sentencing Defendant on Count Two of the Indictment to 22 months imprisonment, to three years of

supervised release, a $100 special assessment, and a $2,500.00 fine.[2] (Doc. 77). On motion of the Government, Count One of the Indictment and a forfeiture claim were dismissed.

In his amended § 2255 motion, Defendant asserts that he requested that his attorney file a notice of appeal following his conviction, but that his attorney failed to do so. (Doc. 107, p. 3). Defendant asserts that this failure constitutes ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. Id. The Government argues that Defendant's § 2255 motion must be denied because it was filed untimely and that the doctrine of equitable tolling does not apply in this case. (Doc. 110, pp. 3-6).

## TESTIMONY

### A. Jorge Caballero-Gonzalez

At the evidentiary hearing held on January 27, 2021, Defendant testified that he remembered pleading guilty to charges in 2018. Defendant testified that prior to pleading guilty, his attorney, Erwin Davis, met with him to discuss the plea agreement. Defendant testified that at that time, he understood English but did not read and write in English well. Defendant testified that Mr. Davis did not bring an interpreter with him when they met and that they discussed the plea agreement in English. Defendant testified that Mr. Davis read the clause regarding possible immigration consequences to him and that he understood what was in the clause but did not understand completely. Defendant testified that Mr. Davis told him he would need to speak to an immigration attorney if he had questions regarding how pleading guilty would impact his immigration status. Defendant testified that he met with Mr. Davis two times after he pled guilty

---

[2] Defendant was released from custody on November 7, 2019 (Gov. Evid. Hearing Ex. A), and has since been deported to Mexico.

but before he was sentenced. Defendant testified that Mr. Davis explained his appeal rights to him.

Defendant testified that at the sentencing hearing in October of 2018, he was confused when the judge.[3] advised to him about possibly being deported. Defendant testified that the judge took a recess so that he could talk to Mr. Davis. Defendant testified that he told Mr. Davis he did not want to plead guilty if it meant he would be deported. Defendant testified that Mr. Davis told him that if he did not plead guilty, he would have a sentence between ten and twenty years. Defendant testified that after he was sentenced, before he left the courtroom, he told Mr. Davis that he wanted to file an appeal, and Mr. Davis told him he would come to the jail before the fourteen day time period to appeal expired. Defendant testified that Mr. Davis never came to the jail to visit him. Defendant testified that after he was sentenced, he did not try to call Mr. Davis from the jail because Mr. Davis had told him he would not accept phone calls from the jail. Defendant testified that his wife tried to contact Mr. Davis during that fourteen day period and that she was unable to talk to Mr. Davis.[4]

Defendant testified that he was at the Washington County Detention Center for a little over two weeks after he was sentenced, and then he was transferred to a jail in Oklahoma, where he did not have access to a law library. Defendant testified he was later transferred to a jail in El Paso, Texas, where he had access to a law library. Defendant testified that the materials in the library were in English. When asked how he was able to understand the legal research in English, Defendant testified that he was able to take courses to learn basic, medium and advanced English, all of which took about three months. Defendant testified that while he was able to understand

---

[3] United States District Judge Timothy L. Brooks presided over Defendant' case.
[4] Mr. Davis passed away on October 28, 2019. (Doc. 107, p. 5).

spoken English at his sentencing, he took the courses at the jail to learn to read and write in English. After taking the English courses, Defendant testified that he earned his "GAD," which took another two months. Defendant testified that he then started to read the legal research in English and learned he had an opportunity to appeal his case. Defendant testified that someone helped him type his § 2255 motion.

Defendant testified that he completed his § 2255 motion and signed it on October 2, 2019, and immediately put it in the prison mailing system. Defendant's original § 2255 motion contains a declaration that Defendant put the motion in the prison mailing system on October 2, 2019. (Def. Evid. Hearing Ex. A, p, 13). Defendant testified that he paid to have his § 2255 motion sent by certified mail so there would be a record of when he sent the motion. Defendant testified he did not know why the envelope containing his § 2255 motion was postmarked October 31, 2019. When asked where he put his mail, Defendant testified that he gave the mail to the person at the mail office in the jail. A United States Postal Service tracking history indicates that Defendant's motion was delivered to the Court on November 4, 2019. (Gov. Evid. Hearing Ex. B).

### B. Daniela Simoes

Daniela Simoes, Defendant's wife, testified at the hearing held on January 27, 2021. Ms. Simoes testified that she tried to contact Mr. Davis multiple times during the fourteen days following Defendant's sentencing, but was unable to talk to Mr. Davis directly. When asked about Defendant's filing of the § 2255 motion, Ms. Simoes testified that she did not recall when Defendant told her he put his § 2255 motion in the mail, but she remembered Defendant was happy because he told her he had met the deadline.

## C. Silvanna Hernandez

At the hearing held on January 27, 2021, the Government submitted an affidavit from Silvanna Hernandez, the mailroom supervisor at the Reeve County Detention Center (Reeves), stating that Monday through Friday, inmate mail was picked up from the RHU and all housing units at or around 7:30 AM. (Gov. Evid. Hearing Ex. D). Ms. Hernandez stated that the mail was then brought back to the office where it was sorted and stamped. Id. Legal Mail was documented on the "Outgoing Legal Log." Id. The inmate and facility mail was then taken to the Post Office at 10:00 AM. Id.

The Court scheduled a supplemental hearing to elicit testimony from Ms. Hernandez regarding the mail procedures at Reeves. At the supplemental hearing held on February 19, 2021, Ms. Hernandez testified that she has worked at Reeves since 2003, and has been the mailroom supervisor for sixteen years. Ms. Hernandez testified that prison mail is processed every day, Monday through Friday. Ms. Hernandez explained that the prison mail is separated into regular, legal, and certified mail. Ms. Hernandez explained that the officers collect the prison mail from the inmates and place it in a box in the officers' office space. Ms. Hernandez testified that every morning, she goes to this office and picks up the prison mail from this box. Ms. Hernandez testified that the mail she picks up in the morning is processed and then taken to the Post Office the same day, Monday through Friday. Ms. Hernandez explained that legal and certified mail are logged into the computer the day the mail is picked up from the box. Ms. Hernandez testified that the money to pay for the certified prison mail is taken directly out of the inmate's account. When asked what day Defendant placed his certified mail in the prison mailing system, Ms. Hernandez

testified that the Inmate Outgoing Legal List (Gov. Evid. Hearing Ex. 5.[5]) reflects that Defendant gave his certified mail to the officers to be put in the box to be mailed on October 31, 2019. Ms. Hernandez testified that the mailing envelope will also have the date the certified mail was mailed if it is on a Monday through Friday. When told that Defendant testified that he gave the mail to the officer on October 2, 2019, and asked if there would be a reason the mail would not have been logged until October 31, 2019, Ms. Hernandez testified that was a long time and it was not their practice to have mail that long.

## II. DISCUSSION

### A. TIMELINESS OF THE MOTION

The Government's argument that Defendant's motion was not timely filed is a threshold issue that the Court must decide. This issue is governed by 28 U.S.C. § 2255(f). All motions filed under § 2255 are subject to a one-year statute of limitation. Id. The one-year period begins to run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[5] The Court notes the Government's first four exhibits are labeled A through D, the fifth exhibit is labeled #5.

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1-4). Under the prison mailbox rule, a 28 U.S.C. § 2255 motion is deemed timely filed when an inmate deposits the motion in the prison mail system prior to the expiration of the filing deadline. See Moore v. United States, 173 F.3d 1131, 1135 (8th Cir. 1999).

As noted above, Defendant was convicted on October 10, 2018. Therefore, Defendant's conviction became final on October 24, 2018, when 14 days passed without filing an appeal. Fed. R. App. P 4(b)(1)(A)(defendant in a criminal case has 14 days to file a notice of appeal); (Doc. 77). Thus, Defendant had until October 24, 2019, to file his § 2255 motion. The envelope for the original § 2255 motion was postmarked October 31, 2019, and was filed with the Court on November 4, 2019.

Defendant testified that he placed his § 2255 motion in the prison mailing system on October 2, 2019, which the Court notes was a Wednesday. Defendant testified that after he signed his § 2255 motion, he immediately placed the motion in the prison mailing system. Defendant testified that he specifically asked for certified mail so that there would be a record of when he sent the motion.

Ms. Hernandez testified that prisoner mail is picked up every morning, Monday through Friday. Ms. Hernandez testified it is the policy to record all certified mail on the Inmate Outgoing Legal List. Ms. Hernandez testified that according to the Inmate Outgoing Legal List, Defendant's § 2255 motion was picked up, logged on the Inmate Outgoing Legal List, and taken to the Post Office on October 31, 2019, which was a Thursday.

The Court acknowledges Defendant's argument that there is no direct evidence to show the date Defendant placed his certified mail into the hands of an officer; however, the Court finds the testimony of Ms. Hernandez to be credible as the mailroom policy she explained is supported by both the Inmate Outgoing Legal List and the date stamp on the envelope indicating Defendant's § 2255 motion was placed in the mail on October 31, 2019. As Defendant was required to place his motion in the mail by October 24, 2019, the Court finds his § 2255 motion was untimely filed.

## B.     EQUITABLE TOLLING

Defendant asserts that even if the Court determines that his § 2255 motion was untimely filed, the statute of limitations should be equitably tolled, as there were extraordinary circumstances that prevented him from filing his motion timely. Specifically, Defendant asserts that his inability to read or write in English and his lack of legal knowledge prevented him from timely filing his § 2255 motion. The Government argues that equitable tolling is an extreme measure and should not be granted in this case.

"The one-year statute of limitation may be equitably tolled 'only if [the movant] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing.'" Muhammad v. United States, 735 F.3d 812, 815 (8th Cir. 2013)(quoting Holland v. Florida, 560 U.S. 631, 648 (2010)). "Equitable tolling is an exceedingly narrow window of relief." Maghee v. Ault, 410 F.3d 473, 476 (8th Cir. 2005). Application of the doctrine "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Jihad v. Hvass, 267 F.3d 803 (8th Cir. 2001)(internal quotation marks and citation omitted).[6]

---

[6] Jihad involved a § 2254 habeas petition. However, §§ 2254 and 2255 have been held to "mirror each other in operative effect" and cases applicable to one have been held applicable to the other. See e.g., Reed v. Farley, 512 U.S. 339, 353 (1994).

Assuming that Defendant could establish he was diligently pursuing his rights, he cannot demonstrate that some extraordinary circumstance stood in his way. The transcript of the plea hearing reflects Defendant was made aware that an interpreter was on stand-by at the hearing to assist him and that Defendant told the Court that he understood about ninety percent of spoken English and could read about eighty percent of printed English. (Doc. 105, pp. 5-7).

Further, at the sentencing hearing, Defendant was again made aware that an interpreter was on stand-by to assist him and that Defendant told the Court he was comfortable proceeding in English. (Doc. 106, pp. 2-3). The undersigned, therefore, does not find Defendant's testimony regarding his inability to read and write in English to be credible. Further, the lack of fluency in English does not constitute an extraordinary circumstance that justifies equitable tolling. Mendoza v. Minnesota, 100 F.App'x 587, 588 (8th Cir. 2004); Cross–Bey v. Gammon, 322 F.3d 1012, 1015 (8th Cir.2003)(prisoner's lack of legal knowledge or lack of access to legal resources does not warrant equitable tolling); See Cobas v. Burgess, 306 F.3d.441, 444 (6th Cir. 2002)("An inability to speak, write and/or understand English, in and of itself, does not automatically" justify equitable tolling.). As he cannot establish he is entitled to equitable tolling, Defendant's motion is barred by the one-year statute of limitation.

### III.  CONCLUSION

Based upon the foregoing, the undersigned hereby recommends that Defendant's Motion to Vacate filed pursuant to 28 U.S.C. § 2255 be **DENIED** and his petition be **DISMISSED**.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §§ 2253(b) & (c)(2); see Copeland v. Washington, 232

F.3d 969, 977 (8th Cir. 2000).  A "substantial showing" is a showing that "issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  <u>Randolph v. Kemna</u>, 276 F.3d 401, 403 n.1 (8th Cir. 2002)(quotation marks and citation omitted).  Based upon the above analysis of Defendant's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of March 2021.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE